UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAWN BUNCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-0458-CVE-FHM |
| | ) | |
| INDEPENDENT SCHOOL DISTRICT NO. | ) | |
| I-050, OSAGE COUNTY, a/k/a Prue Public | ) | |
| Schools, RON MEADOWS, GERALD | ) | |
| JACKSON, VALERIE TRASTER, SYLVIA | ) | |
| HENDRICKS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court are Defendants' Motion for Summary Judgment (Dkt. # 27) and

defendants' Motion to Strike Inadmissible Evidence and Improper Argument in Plaintiff's Response

in Opposition to Defendants' Motion for Summary Judgment (Dkt. # 46).  Plaintiff Dawn Bunch,

a former employee of Independent School District No. I-050, Osage County, Oklahoma (the School

District or the District), brings the following claims against the District and individual members of

the District Board of Education (the Board of Education or the Board): a claim under 42 U.S.C. §

1983 for violation of her substantive and procedural due process rights; a § 1983 claim for retaliating

against her in violation of her free speech rights; and state law claims for breach of employment

contract, intentional interference with her employment contract, and conspiracy to interfere with her

employment contract and violate her due process and free speech rights.  Dkt. # 2.  Defendants seek

summary judgment on each of Bunch's claims.  Dkt. # 27.  They also seek to have certain material

stricken from Bunch's response to their motion for summary judgment.  Dkt. # 46.

## I.

Bunch is the former district treasurer and activity fund treasurer for the School District.  The individual defendants, Ron Meadows, Gerald Jackson, Valerie Traster, and Sylvia Hendrix,[1] were four of the five members of the Board of Education during times relevant to this matter.

A.      Bunch's Employment Contracts

Bunch began her employment with the School District as a cafeteria worker in August 2003.  Dkt. ## 32-2, at 5; 32-3, at 1.  She does not remember who was on the Board of Education at that time, and did not know the Board members personally.  Dkt. # 32-2, at 6.  During Bunch's first year of employment, the district treasurer left for personal reasons.  Bunch applied to superintendent Joe Hulsey for the treasurer position, and was selected.  Id. at 8.

It was the District's normal practice to enter into new employment contracts with school employees at the beginning of each school year.[2]  Id. at 11. Bunch and the District entered into a Support Employee Contract for the remainder of the 2003-04 school year and the 2004-05, 2005-06, 2006-07, and 2007-08 school years.  Dkt. ## 32-2, at 11-14; 32-3, at 1; 32-7, at 1; 32-8, at 1; 32-9, at 1.  These contracts are not at issue in this case.

On August 28, 2007, Bunch and the District entered into an Extra Duty Assignment Contract for the extra duty assignment of "Activity Treasure [sic]" for the 2007-08 school year.  Dkt. # 32-6, at 1.

> A) This Extra Duty Assignment Contract does not create any property interest of any kind or at anytime; B) This Extra Duty Assignment Contract does not create any right to a due process hearing of any kind at any time; C) This Extra Duty

---

[1]      Hendrix's name was mis-spelled in the Complaint.

[2]      For some reason, these contracts were not always signed at the beginning of the school year.

2

Assignment Contract and the corresponding compensation under this Extra Duty Assignment Contract may be terminated by the District at anytime without cause, it being specifically agreed and understood that this Extra Duty Assignment Contract is a contract at will . . . .

Id. (as in original).

On October 6, 2008, Bunch and the District entered into a contract for the 2008-09 school year titled "Prue School District Annual Employment Contract for Support Personnel." Dkt. # 32-10, at 1. This contract does not specify the position to which it relates, but the parties agree that it was for Bunch's employment as School District treasurer. The contract provided that Bunch would work seven hours per day, five days per week for 215 work days per fiscal year, and that she would be compensated at a rate of $8.75 per hour. Id. The "Term" section provided, "[t]his Contract shall be subject to termination at any time prior to June 30th [2009] pursuant to the School District's written policies and procedures, a copy of which Employee acknowledges receiving." Id. at 1-2. Among the "termination events" listed was "[t]he discharge of Employee by School District, subject to the provisions of paragraph 6 if the employee has worked for the School District for one year of continuous full-time employment . . . ." Id. at 2. Paragraph six provided, "[a]fter one year of continuous employment with the School District as a 'full time support employee,' as defined by the School District, Employee shall be entitled to the employment security protection of Oklahoma law and shall be subject to discharge, suspension or demotion during the term of this Contract only for cause (including lack of funds or lack of work) as specified in the rules and regulations of the School District pursuant to the School District's Policy Statement for Suspension, Demotion, Termination or Nonreemployment of Support Employees and subject to the due process hearing rights provided in said Policy Statement." Id. at 2-3.

Also on October 6, 2008, Bunch and the District entered into a second contract, the Annual Employment Contract for Support Personnel, that was substantially similar to the employment contract for the district treasurer position except that it provided that Bunch would be compensated at a rate of $6,000 per year and did not specify days and hours of work.  Dkt. # 32-11, at 1.  This contract does not specify the position to which it relates, but the parties agree that it was for the extra duty assignment of activity fund treasurer.  Bunch believed that the terms of her employment for the 2008-09 school year were the same as for the 2007-08 school year.  Dkt. # 32-2, at 24.

A "support employee" is "an employee for the School District who provides those services, not performed by professional educators or licensed teachers, which provides those services not necessary for the efficient and satisfactory functioning of the School District."  Dkt. # 32-5, at 11. A "full-time support employee" is "a support employee who regularly works the standard period of labor which is generally understood to constitute full-time employment for the type of services performed by the employee and who is employed by the School District for a minimum of 172 days a year."  Id.  Pursuant to the District's support employee policy, "[a] full time support employee who has been employed by the School District for more that [sic] one year shall be suspended, demoted, terminated or non-reemployed during the term of his/her contract only for cause . . . .  Any support employee who has been employed by the School District for less than one year (12 months) is not entitled to invoke the procedures of this policy and such employee's contract can be terminated at any time without cause."  Id. at 12.  The policy and Oklahoma law provide such long-term full-time support employees the right to a hearing before the Board of Education.  Id. at 15-16; OKLA. STAT. tit. 70, § 6-101.40.

4

B.    The Investigation into the School District's Financial Condition and the Removal of Bunch
      as Treasurer

Tim Green is the executive director of financial services for Bartlesville, Oklahoma public

schools. Dkt. # 32-13, at 4. Green also does consulting work for schools. Id. at 6. In October 2008,

the Board's counsel, John Moyer, contacted Green about examining the District's finances and

determining whether "the superintendent could handle the situation . . . ." Id. at 7. The

superintendent at that time was Randy Cottrell. Green reviewed the District's estimate of needs,

bank statements, and financial reports. What he found concerned him. He determined that he could

not square the District's bank statements with the District financial records. "In fact, when [he] ran

a cash balance sheet on the [D]istrict, there had not been a budget put in place since 2003, so that

they could track their appropriations as to their receipts. You couldn't balance back to anything."

Id. at 8. Green determined that the treasurer had not been entering the proper codes in the financial

software system, and that the balances from prior years had not been rolled forward. Id. at 9-10.

Basically, Green determined that the treasurer's records did not match with the District's bank

accounts. Id. at 20. Green reported to the Board that he had concerns about the treasurer, "either

she wasn't properly trained or she was not doing her job as required." Id. at 11. In Green's opinion,

the treasurer should have known how to properly track money coming in and out because she had

been in the position for several years. Id. at 13.   These were basic duties of a school district

treasurer. Id. at 15.

Green recommended to the Board that it employ outside consultants to review the District's

finances in depth. Id. at 17. At the Board's request, Green sent two of his employees, Katrina Lee-

Doggett and Vickie Upton, to do this. Id. at 21. These employees reported to Green that checks had

been written and then placed in a file rather than being mailed out to vendors. Id. at 24. They also

reported that payments to the Internal Revenue Service had not been made. <u>Id.</u> at 26. Green's impression that the District financial records were in disarray was consistent with the impression of Phyllis Tarrant, the interim superintendent who began work in February 2009. Dkt. # 32-25, at 6. When she arrived, Tarrant "found bills that had not been paid, accounts that had been stopped because payments had not been made. We found checks that were to have been mailed that were stuffed in a drawer. We had claims that had not been filed for moneys that were due." <u>Id.</u> at 7. Defendant and Board member Traster was also aware that district bills were not being paid during Fall 2008. She was eating a meal at the school and observed a Pepsi delivery man loading product back into his truck because the Pepsi bill had not been paid. Dkt. # 32-20, at 4.

Green made a written report to the Board on November 20, 2008. Dkt. # 32-18. He met with the Board on November 25, 2008. Dkt. # 32-13, at 27. Regarding the treasurer, Green recommended "that, you know, the treasurer, you know, she's been there five years and she should know all this by now. It would be my recommendation that if she hasn't done the job in five years, she probably doesn't know how to do it now, that they find another treasurer." <u>Id.</u> at 28.

At the November 25, 2008 meeting, the Board members in attendance (Meadows, Jackson, Traster, and Hendrix) voted unanimously to remove Bunch as district treasurer.[3] Dkt. # 32-9, at 3. Each of these Board members believed that Bunch, as district treasurer, served at the pleasure of the Board of Education and could be removed at any time, with or without cause. Dkt. ## 32-14, at 3; 32-15, at 3; 32-16, at 3; 32-17, at 3. They each stated that their decisions to remove Bunch were

---

[3]    Board member Joe Horton, who is not a defendant in this case, was absent from the Board meeting. <u>Id.</u> at 1.

based on the issues raised by Green, his or her own concerns about Bunch's performance and a loss of faith in Bunch's abilities to carry out the treasurer's duties.  Id.

Bunch remained in her position as activity fund treasurer after she was removed as district treasurer.  On December 3, 2008, Meadows and Moyer exchanged e-mails regarding an upcoming board meeting.  Meadows asked, "[a]re we going to consider Ms. Bunch's part-time employment?"  Dkt. # 42-17, at 1.  Moyer responded, "[y]es, termination of same."  Id.  On December 8, 2008, the Board (with Horton absent) unanimously voted to dismiss her from that position.  Dkt. # 32-27, at 7.

C.      Relationship Between Bunch and Defendants

Melvina Prather was hired as the interim superintendent of the School District on April 3, 2008.  Dkt. # 42-3, at 2.  She testified that on April 4, 2008, Meadows told her that "he had made promises when he ran for school Board to get rid of some of the staff at the Prue School District," and that "there were certain people [at the school] that he wanted to see gone," including Bunch.  Dkt. # 42-4, at 2-3.  Prather testified that Meadows told her that Bunch did not do the treasurer job the way his wife had done it.  Id. at 6.  Prather testified that Jackson requested that she fire Bunch.  Id. at 11.  Prather found Bunch to be an excellent employee.  Dkt. # 42-3, at 2. Cottrell interviewed for the superintendent position in June 2008.  He testified that, at that interview, Meadows told him that he wanted the high school and elementary school principals gone.  Dkt. # 42-6, at 4.  Cottrell did not testify that Meadows said anything to him about Bunch.

On July 2, 2008, Hendrix sent an e-mail to Tarrant discussing Cottrell's employment. Tarrant had expressed regret that the Board had hired Cottrell and warned Hendrix to "[w]atch your activity fund, cafeteria fund . . . ."  Dkt. # 42-8, at 1.  Hendrix responded, "He couldn't screw up the

activity fund or anything else around there worse than the two ladies doing it now.  The school treasurer is Dawn Bunch, Brother Mikes [sic] daughter.  I'm sure you remember those children . . . . Need I say more?"  Id.

Horton testified that Meadows made negative comments about Bunch during open Board meetings and in executive session.  Dkt. # 42-7, at 3-5.  He testified that some of these comments were personal, such as regarding Bunch's divorce, and performance-related, such as "that she didn't know her job, that she wasn't doing her job, she was supposed to be full time, she was working part time."  Id. at 6.  He testified that Jackson and Traster never said much, but would generally agree with Meadows.  Id. at 8.  Horton testified that Hendrix made a few "light" comments about how Bunch was not doing her job.  Id. at 9.

At some point after Meadows was elected to the Board, a petition was circulated to impanel the grand jury to investigate wrongdoing or inappropriate behavior by the Board, particularly Traster, Hendrix, Meadows, and Jackson.  Bunch described it as a petition to get Meadows off the Board.  Dkt. # 42-11, at 2.  The petition was filed September 25, 2008.  Dkt. # 42-10, at 1.  Bunch signed it, but was not otherwise involved.  Dkt. # 42-11, at 3, 5.  The petition had over 1,000 signatures.  Id.  Bunch never discussed it with any of the Board members.  Id. at 4.  She does not know whether Meadows was aware that she signed it or supported it.  Id. at 5.  Each defendant states that he or she had no knowledge that Bunch supported the petition.  Dkt. ## 32-14, at 3; 32-15, at 3; 32-16, at 3; 32-17, at 3.

Cottrell testified that Traster was upset that the petition was being circulated at school because it would be a distraction.  Dkt. # 42-6, at 3.  He testified that the only discussions he had with Board members regarding the petition were regarding their concerns about it being circulated

at school. Id. at 5.  Cottrell agreed that it would have been improper for the petition to be circulated at school, because it would have been distracting. Id. at 3.

On September 3, 2008, Hendrix sent an e-mail to Meadows regarding Meadows's proposed resignation from the Board.  Hendrix wrote, "you ran for the School Board because you wanted to right some very serious wrongs, especially to your family. . . . I know the reasons you submitted your resignation, but in all actuality, they have now run off the entire Meadows family." Dkt. # 42-9, at 1.[4]  The e-mail makes no reference to Bunch.  Meadows did not resign from the board at that time.

Bunch testified that she did not criticize any of the Board members in public. Dkt. # 42-11, at 6, 8.  She "vented" privately to her friends and father about "the way she was being treated." Id. at 7.  She expected that her comments would be kept confidential. Id.  Each of the defendants states that he or she had not heard Bunch voice criticisms of any Board member, and that his or her decision to dismiss Bunch was not based on any exercise of Bunch's free speech rights.   Dkt. ## 32-14, at 3; 32-15, at 3; 32-16, at 3; 32-17, at 3.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

---

[4]     There are vague references in the record to an investigation of Meadows's son for theft of school property.  However, the parties have provided no evidence of the participants in or nature or outcome of such investigation.

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Id.</u> at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 250. In its review, the Court draws "all justifiable inferences," <u>id.</u> at 254, and construes the record in the light most favorable, <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998), to the party opposing summary judgment.

## III.

Bunch brings the following claims against defendants: 42 U.S.C. § 1983 claims for violation of her substantive and procedural due process rights and retaliation in violation of her free speech rights; and state law claims for breach of contract, unlawful interference with contract, and

conspiracy to interfere with her rights.  Defendants seek summary judgment on all claims.  The

individual defendants also argue that they are entitled to qualified immunity from Bunch's claims.

A.      Procedural Due Process

Bunch claims that she was dismissed from her positions as district treasurer and activity fund

treasurer in violation of her procedural and substantive due process rights.  The Fourteenth

Amendment Due Process Clause prevents state actors from depriving plaintiffs of protected liberty

or property interests without due process of law.   A threshold question in an employment-related

procedural due process claim is whether the plaintiff has a protected property interest in her

continued employment.  Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998).

> 'A public employee facing discharge is entitled to the safeguards of procedural due
> process only if [s]he can demonstrate that the termination implicates a property or
> liberty interest protected by the Due Process Clause; if a property or liberty interest
> is not implicated, [s]he must settle for whatever procedures are provided by statute
> or regulation.'  Determination of whether a plaintiff has a property interest is a
> question of state law.

Graham v. City of Oklahoma City, 859 F.2d 142, 145-46 (10th Cir. 1998) (per curiam) (quoting

Sipes v. United States, 744 F.2d 1418, 1420 (10th Cir. 1984)).  A protected property interest in

employment exists if plaintiff had a legitimate expectation of continued employment.  Bd. of

Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  A legitimate expectation may be

created by a contract, statute, or regulation that places substantive restrictions on the discretion to

terminate an employee.  See Darr v. Town of Telluride, Colo. 495 F.3d 1243,1251 (10th Cir. 2007)

("an employee may possess a property interest in public employment if she has tenure [or] a contract

for a fixed term"); Hennigh, 155 F.3d at 1254 (discussing legislative restrictions on the discretion

to demote an employee).  In the absence of such a restriction, Oklahoma's default rule is that

employment is at will.  Hayes v. Eateries, Inc., 905 P.2d 778, 781 (Okla. 1995).

Bunch argues that the 2008-09 school year support employee contract (Dkt. ## 32-10; 42-21, at 1-5) for her position as district treasurer created a property interest in her continued employment. The contract provides that,

> [a]fter one year of continuous employment with the School District as a 'full time support employee,' as defined by the School District, Employee shall be entitled to the employment security protection of Oklahoma law and shall be subject to discharge, suspension or demotion during the term of this Contract only for cause (including lack of funds or lack of work) as specified in the rules and regulations of the School District pursuant to the School District's Policy Statement for Suspension, Demotion, Termination or Nonreemployment of Support Employees and subject to the due process hearing rights provided in said Policy Statement.

Dkt. # 32-10, at 2-3; see also OKLA. STAT. tit. 70, §6-101.40.  A full-time support employee who has been employed for over one year is entitled to a pretermination hearing. Dkt. # 32-5, at 15-16. At the time she and the District entered into this contract, Bunch had been employed on a full-time basis for over one year.

Defendants argue that, pursuant to Oklahoma law, a school district treasurer is not entitled to a due process hearing.  Title 70, Section 5-114 of the Oklahoma Statutes provides:

> The county treasurer of each county shall be the treasurer of all school districts in the county, except that the board of education of a school district may appoint a local treasurer for the school district and, in its discretion, an assistant local treasurer of the district, each of whom shall serve at the pleasure of the board for such compensation as the board may determine.

Defendants argue that Bunch was the school district treasurer and, thus, served at the pleasure of the Board.  Bunch argues that she was not the statutory school district treasurer because "there is a difference between a part-time treasurer or independent contractor/appointed treasurer as opposed to a support employee who serves as treasurer," and she was not "appointed." Dkt. # 42, at 16.

12

While there may be a difference, Bunch fails to explain how that difference is material to her due process claim.[5]  The fact that Bunch was not formally appointed is of no import.

Bunch was the school district treasurer for the 2008-09 school year, and was not the county treasurer.  Pursuant to Oklahoma law, a school district treasurer who is not the county treasurer serves at the pleasure of the Board.  OKLA. STAT. tit. 70, § 5-114.  The Board did not have the power to alter the legislatively-mandated employment arrangement by entering into a contract that purported to afford Bunch due process rights.[6]  See Parker v. Town of Chelsea, No. 05-CV-0550-CVE-FHM, 2006 WL 2945386, at *2 (N.D. Okla. Oct. 13, 2006) (applying Oklahoma law) (determining that an employee handbook could not create a property interest in continued employment because the handbook would contravene a statute stating that removals shall be for the good of the service); see also Honnold v. Bd. of Comm'rs of Carter County, 177 P. 71, 72 (Okla. 1916) (holding that entering into a particular contract was an ultra vires act because, pursuant to statute, the board did not have the power to enter into such contract).  Because it contravenes OKLA. STAT. tit. 70, § 5-114, the provision of Bunch's district treasurer employment contract that purported

---

[5]   It is difficult to see how Bunch's full-time status makes it less likely that she was the official district treasurer under the relevant statute.

[6]   The Oklahoma Legislature has determined that school district treasurers should serve at the pleasure of the Board.  Thus, a school board does not have the power to bind future school boards to a particular treasurer by entering into a contract with that treasurer.

to give her due process rights is void.[7]  As district treasurer, Bunch served at the pleasure of the Board and had no legitimate expectation of continued employment or right to a hearing.

It appears that the District used the wrong form contract for Bunch's extra duty assignment for the 2008-09 school year, because it used the support employee contract form rather than the extra duty assignment contract form that had been used for Bunch's extra duty assignment for the 2007-08 school year.  Compare Dkt. # 32-11 with Dkt. # 32-6.  Bunch's extra duty assignment contract for the 2007-08 afforded Bunch no due process rights and provided that the extra duty assignment could be terminated at any time and without cause.  Dkt. # 32-6, at 1.  Bunch believed that the terms of her extra duty assignment for the 2008-09 school year were the same as for the 2007-08 school year.  Dkt. # 32-2, at 24.  Thus, Bunch understood that her 2008-09 extra duty contract did not afford her due process rights.

Further, Bunch's 2008-09 contract for the activity treasurer position stated that discharge would be subject to due process protections "if the employee has worked for the School District for one year of continuous full-time employment."  Dkt. # 32-11.  Although inartfully worded, this provision necessarily contemplates that the employee has been employed continuously for over one year immediately prior to the discharge.[8]

---

[7]     Although defendants do not raise this argument, it could be argued that the district treasurer is not a "support employee" because the treasurer does not "provide[ ] those services not necessary for the efficient and satisfactory functioning of the School District."   Dkt. # 32-10, at 2-3; OKLA. STAT. tit. 70, §6-101.40.   A district treasurer is required by statute to perform certain duties and services that are necessary for the functioning of the school district.  Further, if the district treasurer were considered a "support employee," OKLA. STAT. tit. 70, § 5-114 would conflict with OKLA. STAT. tit. 70, §6-101.40.

[8]     Otherwise, an employee who had worked for the District for over one year in the past and, after a break, was re-employed by the District would be entitled to full due process protections on the first day of her new employment.

14

Bunch's part-time employment as the activity fund treasurer was terminated on December 8, 2008, thirteen days after her employment as district treasurer ended.  Thus, at the time she was terminated as activity fund treasurer, she had not been continuously employed as a full-time support employee for one year immediately prior to her discharge.  Therefore, as activity fund treasurer she was not entitled to the due process protections afforded to full-time support employees and could be terminated at any time, with or without cause.  Defendants are entitled to summary judgment on Bunch's procedural due process claim.

B.     Substantive Due Process

Bunch asserts that her substantive due process rights were violated.  However, she has not explained how her substantive due process rights were violated, nor did she respond to defendants' arguments regarding substantive due process in her response to defendants' motion for summary judgment.  See Dkt. # 42, at 16-18.  Substantive due process protections "are accorded primarily 'to matters relating to marriage, family, procreation, and the right to bodily integrity.'"  Williams v. Berney, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting Albright v. Oliver, 510 U.S. 266 (1994)).  "In extending these concepts to further bar 'certain government actions regardless of the fairness of the procedures used to implement them,' the Supreme Court has emphasized 'that only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'"  Williams, 519 F.3d at 1220 (quoting County of Sacramento v. Lewis, 523 U.S. 833 (1998).  Drawing all reasonable inferences in Bunch's favor, the Court finds that defendants' conduct does not rise to the level of a substantive due process violation.  Bunch's substantive due process claim fails as a matter of law.

15

C.    Retaliation

The First Amendment protects public employees' rights to speak as citizens on matters of

public concern, and prevents public employers from retaliating against employees for such speech.

The Tenth Circuit uses the five-step inquiry set out in Pickering v. Board of Education, 391 U.S. 563

(1968), as modified by Garcetti v. Ceballos, 547 U.S. 410 (2006), to analyze public employees'

retaliation claims.  See Rohrbough v. Univ. of Colo. Hosp. Auth., 596 F.3d 741, 745 (10th Cir.

2010).  The Garcetti/Pickering inquiry is:

> (1) whether the speech was made pursuant to an employee's official duties; (2)
> whether the speech was on a matter of public concern; (3) whether the government's
> interests, as employer, in promoting the efficiency of the public service are sufficient
> to outweigh the plaintiff's free speech interests; (4) whether the protected speech was
> a motivating factor in the adverse employment action; and (5) whether the defendant
> would have reached the same employment decision in the absence of the protected
> conduct.

Id. (quoting Dixon v. Kirkpatrick, 553 F.3d 1294, 1302 (10th Cir. 2009)).  The first three steps are

questions of law to be resolved by the district court, while the last two are ordinarily to be resolved

by the trier of fact.  Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir.

2007).

Bunch alleges that she was terminated in retaliation for her support of the grand jury petition

and the comments she made to friends and family that were critical of the Board.  Dkt. # 42, at 22-

23.  She alleges that the Board members were aware of the grand jury petition and "were upset about

it."  Id. at 23.  Bunch signed the grand jury petition, but has provided no other evidence of her

support for it.  She was one of over 1,000 people who signed the petition.  Dkt. # 42-11, at 5.  She

never discussed the petition with any Board member.  Dkt. # 32-2, at 34.  She admits that she never

spoke publicly about the petition or made public statements critical of the Board.  Id. at 36.  Her

statements consisted of "venting" to her friends or to her father/pastor. Id. at 37. Bunch has no idea whether Meadows knew that she supported the petition. Id. at 34. She testified that two superintendents told her that her name was brought up in executive sessions of the Board. Id. at 36.

Each defendant states that he or she had no knowledge that Bunch supported the petition. Dkt. ## 32-14, at 3; 32-15, at 3; 32-16, at 3; 32-17, at 3. Each of the Board members states that he or she had not heard Bunch voice criticisms of any school Board member, and that his or her decision to dismiss Bunch was not based on any exercise of Bunch's free speech rights. Id.

Bunch's vague assertions that she made comments to friends and her father that were critical of the Board do not create a genuine issue of material fact that she was retaliated against for making such statements. She has provided no evidence of when or where these comments were made, and no specifics as to the content of such comments. See, e.g., Harvey v. Baker, 242 Fed. App'x 547, 551 (10th Cir. 2007) (unpublished)[9] (holding that a plaintiff's vague, non-specific testimony was insufficient on its own to create a genuine issue of material fact that he engaged in protected speech, and noting that there was no evidence from any of the plaintiffs as to what they said and when); Craven v. Univ. of Colo. Hosp. Auth., 260 F.3d 1218, 1226 (10th Cir. 2001) (describing plaintiff's allegation that she was terminated in retaliation for speech "on other matters" as "patently inadequate," and noting that "it is the place of counsel, not the [court], to identify the specific instances of speech upon which the plaintiff seeks to base her claim"); Rankin v. Indep. Sch. Dist. No. I-3, Noble County, Okla., 876 F.2d 838, 847 (10th Cir. 1989) (affirming a directed verdict in defendant's favor where there was no evidence of the content, form and context of any protected

---

[9]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

speech).  Bunch's mere speculation that Board members could have been aware of these non-specific comments does not create a genuine issue of material fact.

The only evidence Bunch has offered of a specific public statement is her signature on the grand jury petition.  The Court will apply the Garcetti/Pickering analysis to this statement.  Bunch's signature on the petition was not made pursuant to her official duties as district treasurer or activity fund treasurer.  The petition was a matter of public concern because it related to the administration of the District.  Bunch's free speech rights outweigh any efficiency interest that the government may have in suppressing this speech.  Therefore, the first three elements of the Garcetti/Pickering analysis are satisfied.

Although the latter two elements are often questions of fact for the jury, they may be resolved on summary judgment if there is no genuine issue of material fact.  See, e.g., Couch v. Bd. of Trustees of Memorial Hosp., 587 F.3d 1223 (10th Cir. 2009) (affirming summary judgment in defendant's favor based on the fourth and fifth elements of the Garcetti/Pickering test).  Bunch's evidence that her signature on the grand jury petition was a motivating factor behind her termination is the temporal proximity between the petition and her termination and the vague hearsay statements that her name was mentioned in executive sessions of the Board.[10]  The evidence that Traster was upset that the petition was being circulated at the school is not evidence of a connection between Bunch's signature and her termination because it has nothing to do with Bunch or the content of the

---

[10]     The alleged comments by Meadows and Jackson to Prather about firing Bunch occurred before the petition was filed, and are thus not evidence of retaliation for Bunch's signature on the petition.  Horton described Board members' negative comments about Bunch as relating to her job performance or, perhaps, her physical appearance.  There is no evidence that Board members discussed Bunch's involvement with the petition.

petition.  Traster was concerned that circulating the petition at school would be distracting. With regard to causation under the third Garcetti/Pickering element, the Tenth Circuit has explained that,

> 'Although protected conduct closely followed by adverse action may justify an inference of retaliatory motive, the mere temporal proximity of Plaintiff's protected speech to the adverse action is insufficient, without more, to establish retaliatory motive.' We have explained, for instance, that it might be relevant in establishing a retaliatory motive that 'the employer expressed opposition to the employee's speech,' or that 'the protected speech implicated the individual defendant in wrongdoing.' On the other hand, we also have explained that 'evidence such as a long delay between the employee's speech and challenged conduct, or evidence of intervening events, tend to undermine any inference of retaliatory motive and weaken the causal link.'

Id. at 1236 (internal citations omitted).  The temporal proximity between the petition and Bunch's termination, without other evidence, is insufficient to create a genuine issue of material fact as to retaliation.  Further, there is evidence of intervening events; particularly, the investigation into the financial condition of the school and Green's determination that Bunch was not performing her treasurer duties properly.  Aside from Prather's testimony that Bunch was a good employee, Bunch has provided no evidence that Green's assessment of her job performance was incorrect.  Bunch has failed to establish a genuine issue of material fact as to causation.  Therefore, defendants are entitled to summary judgment on Bunch's First Amendment retaliation claim.

D.     Qualified Immunity

Defendants are entitled to summary judgment on Bunch's § 1983 claims.  Therefore, the Court need not consider defendants' argument that they are entitled to qualified immunity.

E.      Breach of Contract, Interference with Contract, and Conspiracy Claims

Bunch's remaining claims arise under state law.[11]  Defendants are entitled to summary judgment on all of Bunch's federal law claims.  See Parts III. A-C, supra.  If a federal court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over remaining claims.  28 U.S.C. § 1367(c)(3); Gaston v. Ploeger, 297 Fed. App'x 738, 746 (10th Cir. 2008) (unpublished)[12] (stating that § 1367(c)(3) expressly permits a district court to decline to exercise supplemental jurisdiction over remaining state law claims after granting summary judgment in favor of defendant on federal law claims).  Bunch's remaining claims arise under state law.  The Court cannot determine at this time whether it has diversity jurisdiction over these claims because the parties' states of citizenship are not part of the record.  Therefore, Bunch's state law claims will remain under advisement pending a determination of this Court's diversity jurisdiction.  After the jurisdictional issue is resolved, the Court will determine whether it will exercise supplemental jurisdiction.

---

[11]     Although Bunch's complaint did not specify whether she was alleging a conspiracy claim under Oklahoma or federal law, her response to defendants' motion for summary judgment shows that she is asserting a state law conspiracy claim only.  Dkt. # 42, at 23.

[12]     Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1: 10th Cir. R. 32.1.

F.      Motion to Strike

The Court has considered all evidence submitted by Bunch and has determined that defendants are entitled to summary judgment on Bunch's federal law claims.  Therefore, defendants' Motion to Strike Inadmissible Evidence and Improper Argument in Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. # 46) is moot insofar as the evidence relates to Bunch's federal law claims.  The motion remains under advisement insofar as the evidence relates to Bunch's state law claims.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Dkt. # 27) is **granted in part and remains under advisement in part**.  It is granted with respect to plaintiff's federal law claims and remains under advisement with respect to plaintiff's state law claims.

**IT IS FURTHER ORDERED** that defendants' Motion to Strike Inadmissible Evidence and Improper Argument in Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. # 46) is **moot in part and remains under advisement in part**, as described in Section III.F, supra.

**IT IS FURTHER ORDERED** that the parties are to advise the Court, in pleading format, of the citizenship of plaintiff and the individual defendants no later than **August 23, 2010**.

**DATED** this 20th day of August, 2010.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE